UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRYAN H. MCQUEEN, ) <br> ) <br> Defendant. ) <br> ) <br> ) | No. 6:11-CR-54-GFVT-HAI-12 <br><br> RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 647 at 2), the Court considers reported violations of supervised release conditions by Defendant Bryan McQueen. Judge Van Tatenhove entered a Judgment against Defendant on September 20, 2012, for one count of conspiracy to distribute a quantity of pills containing oxycodone. D.E. 429 at 1. Defendant was sentenced to fifty-one months of imprisonment followed by three years of supervised release. *Id.* at 2-3. Defendant's sentence was later reduced to forty-two months pursuant to 18 U.S.C. § 3582(c)(2), which allows for a reduction in the term of imprisonment originally imposed. D.E. 550. Defendant began his initial supervised release term on October 30, 2015.

The United States Probation Office ("USPO") submitted a Report on Offender Under Supervision on February 24, 2016, and requested that no action be taken after Defendant admitted to using methamphetamine. D.E. 570. The Court approved the USPO's request. *Id*. On September 6, 2016, the USPO submitted a Supervised Release Violation Report after Defendant used methamphetamine again. D.E. 589. Defendant stipulated to violating the terms of his supervised release by using a controlled substance and committing a federal, state, or local crime. *Id*. at 3. Judge Van Tatenhove revoked his supervised release and sentenced him to

twelve months of imprisonment followed by three years of supervised release. D.E. 593 at 2-3. Defendant began his current term of supervised release on September 13, 2017. The USPO submitted a Report on Offender Under Supervision on October 23, 2017, again requesting that no action be taken, after Defendant failed to truthfully answer inquiries and follow instructions of the probation officer. D.E. 645. The Court approved this request on October 27, 2017. *Id*.

On November 9, 2017, the USPO issued another Supervised Release Violation Report ("the Report"), and secured an arrest warrant on November 14, 2017. D.E. 648. Defendant was arrested on January 1, 2018. D.E. 651. The Report alleges that Defendant submitted a urine sample to the probation office on October 31, 2017, which ultimately tested positive for methamphetamine. The Report charges Defendant with two violations stemming from this positive urine sample. Violation #1 charges that Defendant violated Special Condition #7, which requires him to refrain from purchasing, possessing, using distributing, or administering any controlled substance or paraphernalia related to any controlled substance, except as prescribed by a physician. This is a Grade C Violation. Violation #2 charges that defendant violated the prohibition against committing a federal, state, or local crime based on his criminal history and the possession of methamphetamine, which is a violation of 21 U.S.C. 844(a), and a Class E Felony. This is a Grade B Violation.

**I.**

On January 2, 2018, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 652. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release.

2

*Id*. Based on the heavy § 3143(a) defense burden, the Court remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on January 10, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 653. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report. The United States thus established both violations under the standard of section 3583(e). *Id*.

The parties did not agree as to the sentence. The government argued for revocation with eighteen months of incarceration. Defense counsel argued for eight months of imprisonment followed by one year of an inpatient drug treatment program and a few months of supervised release, or, alternatively, eight months of imprisonment followed by ninety days of inpatient drug treatment and a longer term of supervised release. Defense Counsel also recommended that the Court conduct a status conference at the conclusion of Defendant's treatment to evaluate his progress and, if he completes ninety days of inpatient treatment, to determine if a year-long program is available.

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was convicted of the Class C felony of conspiracy to distribute a quantity of pills containing oxycodone. *See* 18 U.S.C. §§ 846; 841(b)(1)(C); 3559(a)(3). Defendant's conviction carries a twenty-four-month

maximum period of incarceration upon revocation.  18 U.S.C. § 3583(e)(3).  There is no maximum term of supervised release that may be re-imposed.  18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements are 'merely advisory' and need only be considered by the district court before sentence is imposed") (citation omitted).  Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation with respect to Violation #2.  Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, his Range, under the Revocation Table of Chapter 7, is eight to fourteen months.  U.S.S.G. § 7B1.4(a).

The government argued for revocation with an above-Guidelines term of imprisonment, eighteen months, followed by no supervised release.  The government argued for a sentence above the Guidelines Range because Defendant's original sentence was below the Guidelines Range.  It emphasized Defendant's significant number of violations and that this is his fourth violation since his initial release from incarceration.  The government noted that Defendant's criminal history shows violent conduct and significant substance abuse.  Regarding the need to protect the public, the government noted that both the underlying offense and his current violation involved controlled substances, and it emphasized the cyclical nature of drug abuse as addicts begin trafficking to support their addiction.  The government stressed the fact that

Defendant has received multiple opportunities to receive substance abuse treatment, but that none have been successful. It concluded that no treatment opportunities remained, so the government did not recommend any term of supervised release to follow a term of incarceration.

Counsel for Defendant argued for a sentence of eight months of imprisonment followed by one year of inpatient substance abuse treatment and a few months of supervised release, or alternatively, eight months of imprisonment followed by ninety days of substance abuse treatment and a longer term of supervised release. Counsel also recommended that the Court conduct a status conference at the conclusion of Defendant's treatment to evaluate his progress.

While defense counsel expressed frustration that Defendant was "back at square one" because of his decision to use methamphetamine, he emphasized Defendant's severe drug addiction that began fifteen to twenty years ago and argued that it has caused most of Defendant's problems. Counsel indicated that he feared for Defendant's life, and requested that the Court focus on rehabilitation rather than punishment when crafting a sufficient sentence. Defense counsel credited the accountability provided by the USPO with saving Defendant's life, and blamed Defendant's decision to lie to the USPO on his drug addiction. Counsel argued that Defendant would benefit most from inpatient treatment, as opposed to incarceration, because it could provide him with the tools to successfully end his drug addiction. Counsel also noted that Defendant was previously enrolled in the Residential Drug Abuse Program ("RDAP") through the Bureau of Prisons, but that he was released pursuant to his section 3582(c)(2) sentence reduction before he could complete it. Defendant declined to address the Court.

### III.

As an initial matter, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's supervised release because he

possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense). While Defendant's original conviction involved the distribution of oxycodone, and not methamphetamine, any drug abuse increases the risk that Defendant will commit other crimes. Regarding Defendant's history and characteristics, he has a long history of violating the terms of his supervised release by using methamphetamine. His three previous violations involved methamphetamine use. In February 2016, the USPO submitted a Report on Offender Under Supervision, notifying the Court that Defendant violated the terms of his supervised release by using methamphetamine, but requested that the Court take no action. In September 2016, Defendant violated the terms of his supervised release again by using methamphetamine and his supervised release was revoked. Now, Defendant violated his supervised release a third time by using methamphetamine. His methamphetamine use creates a need to protect the public because it poses a danger to society by encouraging methamphetamine trafficking and its related societal ills.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court

6

must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e).

Defendant has clearly not lived up to the trust the Court placed in him. Every one of his violations involved lying to his probation officer. He has consistently denied using any illicit substances upon each supervised release violation. Many other Defendants who have similar addictions face the matter truthfully and admit to the USPO that they used, so Defendant's lies cannot be blamed exclusively on his addiction. While the Court does not doubt that Defendant needs long-term treatment for his methamphetamine addiction, he has never admitted to using methamphetamine, so nothing in his record justifies public investment on such rehabilitation. Additionally, nothing in his record supports a conclusion that long-term substance abuse treatment will sufficiently deter future crimes or protect the public. Long-term substance abuse treatment, beyond a six-month halfway house program, is not appropriate because Defendant has not personally acknowledged the extent of his addiction while under supervision.

A fourteen-month sentence is at the top of the Guidelines Range. A sentence below twelve months, the term of imprisonment Defendant received for his previous violation, is inappropriate because it was clearly insufficient to deter him from committing crimes or endangering the public again. A sentence above the Guidelines Range followed by no supervised release is inappropriate because Defendant needs the stability provided by supervised release. The Court believes that fourteen months of incarceration is adequate to deter criminal conduct, protect the public, and address the significant and repeated breach of the Court's trust. For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C). Accordingly and for the reasons stated above, the Court recommends that a one-year term of supervised release be re-imposed, with the first six months of that term to be served at a halfway house. Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of both violations;

2. Revocation with a term of fourteen months incarceration;

3. Supervised release for one year following incarceration; and

4. That, upon his release, Defendant participate in a six-month halfway house program selected by the USPO.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 19th day of January, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge