UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:11-CR-54-GFVT-HAI-12 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| BRYAN H. McQUEEN, ) | AND ORDER |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Bryan McQueen. *See* D.E. 676 at 2. District Judge Van Tatenhove entered a judgment against Defendant in September 2012, following Defendant's guilty plea to conspiracy to distribute a quantity of pills containing oxycodone. D.E. 429. Defendant was originally sentenced to fifty-one months of imprisonment and a three-year term of supervised release, *id.* at 2–3, and his term of imprisonment was later reduced to forty-two months, see Docket Entry 550. Defendant was first released from the custody of the Bureau of Prisons ("BOP") in October 2015.

In February 2016, the United States Probation Office ("USPO") submitted a Report on Offender Under Supervision (12A) to Judge Van Tatenhove requesting that no action be taken against Defendant after he admitted to using methamphetamine. *See* D.E. 570. At that time, Defendant's probation officer recommended that Defendant attend bimonthly outpatient substance-abuse counseling. *Id.* at 1. Judge Van Tatenhove approved that request. *Id.* at 2.

In September 2016, Defendant's supervised release was revoked for his use of methamphetamine and the associated criminal conduct of possession of the drug. *See* D.E. 589; D.E. 592. For that revocation, Defendant was sentenced to twelve months of imprisonment

followed by three years of supervised release.  D.E. 593 at 2–3.  In September 2017, Defendant was released from BOP custody, and upon his release, he expressed a desire to relocate to Fayette County, Kentucky.  Therefore, the USPO in Lexington, Kentucky, began to supervise Defendant.

In October 2017, a Report on Offender Under Supervision (12A) was submitted to Judge Van Tatenhove outlining Defendant's failure to truthfully answer inquiries and follow the directions of his probation officer.  *See* D.E. 645 at 1.  Judge Van Tatenhove approved that no action be taken against Defendant for that noncompliance.  *Id.* at 2.

In January 2018, Defendant's term of supervision was again revoked following his use of methamphetamine and the associated criminal conduct of possession of the drug.  *See* D.E. 654; D.E. 657.  For those violations, Defendant was sentenced to fourteen months of imprisonment followed by one year of supervised release.  D.E. 658 at 2–3.  That revocation judgment also included the special condition that, following his release from custody, Defendant participate in a six-month halfway house program selected by the USPO.  *Id.* at 5.

In February 2019, Defendant was again released from BOP custody to begin service on his term of supervision.  At that time, he entered the Dismas Charities halfway house program in Lexington, Kentucky.

I.

On May 29, 2019, the USPO issued a Supervised Release Violation Report ("the Report") charging Defendant with three violations.  The USPO then secured a warrant for Defendant's arrest from Judge Van Tatenhove.  *See* D.E. 676 at 2; D.E. 681.  On June 4, 2019, the USPO issued an Addendum to the Report charging Defendant with a fourth violation.

First, the Report states that, on May 18, 2019, Dismas Charities staff collected a urine specimen from Defendant, which was sent to Alere Toxicology for testing.  On May 26, the

2

specimen was returned from the laboratory and determined to be "substituted" and "not consistent with normal human urine." Based on this conduct, the Report alleges that Defendant violated the condition of his supervised release that states: "You must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance abuse testing, which is required as a condition of release." This is a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Second, the Report states that on the morning of May 28, 2019, U.S. Probation Officer Brian Rains received information from Dismas Charities that, in the late hours of May 27 into the early morning hours of May 28, halfway house staff attempted to secure a urine specimen from Defendant. While staff were doing so, Defendant was found to be in possession of a Visine bottle, which he refused to turn over. Based on this conduct, the Report again alleges that Defendant violated the condition of his release that states: "You must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance abuse testing, which is required as a condition of release." This is a Grade C violation. *See id.*

Third, the Report states that, as a result of the conduct discussed above, Defendant is being terminated from the Dismas Charities halfway house program. Such a dismissal is prior to Defendant completing the six-month term imposed as a condition of his release. Thus, the Report alleges that Defendant violated the condition of his supervised release that states: "You must participate in a six-month halfway house program selected by the United States Probation Office." This is also a Grade C violation. *See id.*

The Addendum alleges an additional violation by Defendant and states that, on the afternoon of May 31, 2019, deputies with the United States Marshals Service traveled to Dismas Charities, Lexington, for the purpose of serving the outstanding supervised release warrant on

Defendant. After being taken into custody, Defendant was found to be in possession of a small baggie containing heroin. The baggie was recovered from a pocket of Defendant's shorts. Notably, according to the Marshals Service deputies, Defendant verbally confirmed the substance as heroin.

The Addendum explains that heroin is a Schedule I controlled substance, and that under Kentucky law, a person is guilty of possession of a controlled substance – 1st degree, when he knowingly and unlawfully possesses a controlled substance that is classified in Schedules I or II and is a narcotic drug. *See* KRS § 218A.1415. Further, under Kentucky law, such an offense is a Class D felony for the first offense and a Class C felony for the second or subsequent offense. *See id.* This is a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2).

II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on June 4, 2019. D.E. 679. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on June 12, 2019, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 682. Defendant waived a formal hearing and stipulated to Violation Nos. 1 and 3 set forth in the Report and Violation No. 4 set forth in the Addendum. *Id.* The government orally moved to dismiss Violation No. 2 with prejudice. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is, at worst, a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

At the final hearing, the parties offered differing sentencing recommendations to the Court. Specifically, the government recommended that the Court revoke Defendant's supervision and sentence him above the recommended Guidelines range of eight to fourteen months and consider imposing a sentence within the range of eighteen to twenty-four months. The government further recommended an additional year of supervision for Defendant following imprisonment. The defense, on the other hand, recommended a sentence of eight months with no supervised release to follow. Defendant chose to personally address the Court during the hearing, and he explained how he has continued to turn to drugs to fix his problems. He also told the Court about his job and that he is expecting a child this fall with his girlfriend.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846 for conspiracy to distribute a quantity of pills containing oxycodone is a Class C felony. *See* 18 U.S.C. § 3559(a). For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). Relatedly, there is no maximum term of supervised release that the

Court may impose upon revocation in this case. *See* 18 U.S.C. §§ 841(b)(1)(C), 846; *see also* 18 U.S.C. § 3583(h).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation Nos. 1 and 3 and as a Grade B violation with respect to Violation No. 4. Given Defendant's criminal history category of III (the category at the time of his conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

Importantly, Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d). Nothing in the record supports application of the exception.

6

IV.

The Court has reviewed the entire record, including the Report and its accompanying documents, Defendant's underlying judgment and sentencing materials, and the materials relating to Defendant's time on supervision, including his two prior revocations. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis, which the parties addressed at Defendant's final hearing. Through its consideration, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to fourteen months of imprisonment with no term of supervised release to follow.

First, concerning the nature and circumstances of the underlying offense, Defendant was involved in a conspiracy to distribute oxycodone. As evidenced by his present admission to possessing heroin, Defendant has escalated his drug use from prescription medication to methamphetamine to heroin, which is a more dangerous drug. And, by possessing drugs, Defendant continues to associate, on some level, with individuals who traffic drugs. He must be cautious about the company he keeps in order to avoid returning to old habits of criminal behavior.

The Court next considers Defendant's history and characteristics. At the final hearing, defense counsel candidly told the Court that Defendant is an addict, and Defendant did not deny that characterization. However, Defendant has eschewed the Court's attempts to help him, even to the level of possessing heroin while in the halfway house, which is a place designed to provide Defendant, and others, with stability as they adjust to life outside of custody.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes influence the Court's recommended sentence of fourteen months of imprisonment. While Defendant is incarcerated, he is less of a risk to the public for committing

criminal conduct, including possessing drugs and, as explained above, associating with individuals who traffic drugs.

The Court must also consider whether a defendant needs any education, training, or treatment. Although it is apparent that Defendant is an addict, the Court is unwilling to recommend additional substance-abuse treatment at this time. Here, the Court observes that Defendant has failed to fulfill his promises to the Court and that substance-abuse treatment would only be successful if Defendant were honest about his struggles and willing to commit to changing his behavior.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. In this case, the government requested that the Court go above the recommended range of eight to fourteen months and sentence Defendant within the range of eighteen to twenty-four months. Although the government's request was well reasoned, the Court will decline to go above the Guidelines in this instance. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation).

Instead, the Court finds its recommended sentence of fourteen months to sufficiently account for Defendant's breach of the Court's trust, which the Guidelines suggest is the ***primary*** wrong in the supervised release context. Indeed, the Guidelines instruct that the particular conduct of a violation is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This is Defendant's third revocation, and he has received leniency in the form

8

of two 12As while on supervision. To account for the repetitive nature of Defendant's violation conduct, the Court believes that a sentence at the high-end of his recommended range is appropriate.

Finally, the Court must consider whether an additional term of supervision is warranted. On this record, the Court finds that it is not. Throughout the course of his time on supervision, Defendant has continually demonstrated that he has no desire to abide by the conditions of his release. The Court has attempted to provide Defendant with guardrails to keep him out of trouble, but he has not stayed within the confines set for him. Moreover, the Court sees no benefit in requiring the taxpayers to continue to bear the cost of trying to help Defendant succeed when he has demonstrated no desire to use the resources available to him.

In sum, the Court finds that its recommended sentence of fourteen months of imprisonment with no term of supervised release to follow is sufficient, but not greater than necessary, to address all of the statutory factors. *See* 18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3583(e).

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of Violation Nos. 1, 3, and 4;

(2) That, based on the motion of the government, Violation No. 2 be dismissed with prejudice;

(3) Revocation and imprisonment for a term of fourteen months; and

(4) No term of supervision be imposed following Defendant's release from custody.

Additionally, the Court hereby **ORDERS** that the minutes from Defendant's final supervised release hearing at Docket Entry 682 be **AMENDED** in paragraph 1 to state: "It will further be recommended that Violation Number 2 be **DISMISSED.**"

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 682 at 2. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 14th day of June, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge